*Hartford,*
June, 1845.

Smith
*v.*
Russell.

## SMITH *against* RUSSELL:

### IN ERROR.

During the pendency of a suit brought in the name of *A*, judge of probate, against *B*, on a bond given by *B* to such judge, or his successor, for the faithful performance of his duty as a trustee of the estate assigned by an insolvent debtor, under the act of 1828, *A* ceased to be judge, and *B* became his successor in that office. The name of *C*, judge of an adjoining probate district, was thereupon entered, and the cause proceeded to final judgment, which was against *B*. On a writ of error brought by *B*, it was held, 1. that this was an action, which, after *A* went out of office, might be prosecuted by his successor, if not disqualified by interest or position; 2. that *B* being thus disqualified, the judge of an adjoining district might lawfully enter and prosecute the action; 3. that if the law were otherwise, the irregularity might be taken advantage of, by writ of error.

THE original action was one brought by *Joseph Wright*, as judge of probate for the district of *Berlin*, against *Ira E. Smith* and *Benjamin Wilcox*, on a bond by them executed, dated the 30th of *November*, 1839, in the penal sum of 10,000 dollars, to be paid to the plaintiff, as said judge, or his successor in office. The condition of the bond was, that said *Smith*, trustee of the assigned estate of *Joseph Shipman & Sons*, insolvent debtors, under the statute of 1828 against fraudulent conveyances, for the benefit of their creditors, should faithfully perform his duty under the assignment. The action was brought to the superior court, at an adjourned term, in *March*, 1842, and was continued until it came to an adjourned term in *December*, 1842. In the meantime, the plaintiff, *Wright*, had ceased to be judge of probate, and the defendant, *Smith*, had been appointed to that office in his place. The name of *John Russell*, judge of the adjoining probate district of *Hartford*, was thereupon substituted for the original plaintiff, and the cause was continued until it came to an adjourned term in *January*, 1844, when it was tried on a special issue, which was found for the plaintiff, and judgment was rendered thereon, for 363 dollars, 85 cents, damages, and costs of suit. The defendant, *Wilcox*, died before the trial. The defendant, *Smith*, brought a writ of error, in the supreme court of errors, to reverse the judgment of the superior court.

*Hungerford* and *Toucey*, for the plaintiff in error, after remarking that the suit, by the common law, could be maintained only in the name of the obligee, the legal title being in him; (*Bailey* v. *Lewis*, 3 *Day*, 450. *Chaplin* v. *Canada*, 8 *Conn. R.* 286.) contended, 1. That the successor in office of the obligee could only maintain the action by virtue of the statute which authorizes the bond to be taken in the name of the probate judge *and his successors in office.* *Stat.* 228. *tit.* 31. *c.* 1. *s.* 11.

2. That no statute prior to the act of 1838, (*Stat.* 80. ed. 1838,) authorized the successor of the obligee to enter in a suit already commenced, and prosecute it; and to enable him to do so, this act was passed; but it went no further than to enable the *successor* to enter.

3. That the act of 1839 (*a*) merely authorizes the suit to be *brought* in the name of the judge of the adjoining district, and the judge to dispose of the proceeds of the suit, in the same manner as if he were successor of the obligee; but it does not authorize him to enter a suit already commenced.

*T. C. Perkins,* for the defendant in error, insisted, That the name of *Russell* was legally substituted for that of *Wright;* and that the suit in his name was legally prosecuted to final judgment. In support of this position, he urged the following considerations.

In the first place, the acts of 1838 and 1839 were passed to remedy defects in the laws on that subject, previously existing; and remedial laws should be liberally construed to suppress the mischief and advance the remedy. 1 *Sw. Dig.* 11.

Secondly, by the act of 1838, the successor of a judge of probate may enter and prosecute any suit commenced by his predecessor. (*Stat.* 80. ed. 1838.) But here, the successor of *Wright* was *Smith*, the defendant in the suit. He could not become plaintiff in a suit against himself. There must, then, be a failure of justice, unless some other person could enter and prosecute.

Thirdly, the act of 1839 was intended to furnish a remedy applicable to such a case. It provides, that when the judge

(*a*) See public statutes of that year, in pamphlet, *p.* 37.

*Hartford,*
June, 1845.

Smith
*v.*
Russell.

of probate is the obligor in an administration bond, and successor to the judge to whom the bond was given, the judge of an adjoining district may bring the suit, and have the same rights and powers as if he were the successor. The present case falls within the spirit, if not the letter, of this statute. This is substantially an *administration* bond; and the provision that the party interested may *bring* an action, will authorize him to *enter* in one previously commenced.

Fourthly, the judge of an adjoining district may act, where there is a *vacancy* by death, resignation *or otherwise.* (*Stat.* 138. ed. 1838.) Here was substantially a vacancy, so far as this matter is concerned, by reason of the interest of the judge.

Fifthly, the exception, in this case, is taken too late. The entry was made, without objection; after which there was a plea to the merits, and a trial, verdict and judgment. It is not now a ground of reversal.

HINMAN, J. The principle of the ancient common law, that a debt not negotiable, is a mere right of action, which the creditor has against his debtor, and that it is incapable of assignment, is so far regarded in modern times, as that the assignment is looked upon rather as a power of attorney, authorizing the assignee to sue for, and recover it, in the name of the assignor, than as such a transfer as will be of any benefit to the assignee in a court of law. It follows, from this, that had we no statute upon the subject, the suit, in this case, must not only have been commenced in the name of *Wright,* the payee of the bond, but it must have been prosecuted in his name also, if, indeed, it could have been prosecuted at all, after he ceased to be judge of probate. But it is not denied, that by our statute authorizing judges of probate to take bonds of administrators and executors, payable to them and their successors, and by the statute authorizing the successor of any judge of probate in whose name any suit on a probate bond may be pending, to enter and prosecute the same, in his own name, in the same manner as his predecessor might have done, had he continued in office, (*Stat.* 228, 9. 80. ed. 1838.) this suit might well be prosecuted in the name of any successor of *Wright,* who is not in the condition of the plaintiff in error, one of the obligors in the bond;

*Hartford,*
*June, 1845.*

Smith
*v.*
Russell.

and yet there is no statute, which, in express term's, authorizes this. The statute under which this bond was taken, like that regarding guardian bonds, does not direct, that the bond shall be made payable to the judge of probate and his successors. It merely enacts, that the trustees shall give bonds, with surety, to the judge of said court. (*Stat.* ed. 1838, *p.* 301.) It is not, then, because of the express provisions of this statute, that the successor of *Wright* might sue upon this trustee's bond; but it is because the case comes within the reason and spirit of the statute regarding executors' and administrators' bonds; and being within the mischief which was intended to be remedied, by the provision authorizing those bonds to be taken, payable to the successors of the judges of probate, they are also to be held to be within that provision; especially, since the act of 1838 authorizes the successor of a judge of probate to enter and prosecute any suit pending on a probate bond. Judges of probate are understood to be in the practice of taking all official bonds to them and their successors; and that these statutes authorize them to do so, has never been doubted by any one, and is not denied or doubted by the plaintiff in error in this case. On the contrary, he admits, that by virtue of the act of 1839, *p.* 37. *Russell* might bring a suit upon this bond; yet he insists, that he is not authorized, by that act, or any other, to enter and prosecute, in his own name, a suit previously brought by *Wright.* But the act of 1839 does not authorize a suit to be brought in the name of the judge of an adjoining district, in any other case, than in that of an administration bond; and it requires the same liberal construction of that act, to say, that by administration bond, is meant, not merely a bond given by an administrator, but also an executor's and a trustee's bond; and doubtless would be holden to mean any bond authorized to be taken by a judge of probate, in order to enforce the performance of any official duty, as it does to say, that when that act speaks of the right of any person interested in a probate bond, to bring their action, it means to authorize, not merely the commencement of a suit, but also the prosecution of it; and the prosecution also of any suit previously commenced, in all cases where the successor of the judge, in whose name the suit was commenced, is one of the obligors in the bond. The object of the act was, to give to the judge of an

adjoining district the same powers, in the cases provided for by it, that the successor of the judge to whom the bond was given would have had, if he had not been one of the obligors in the bond.

*Hartford,*
June, 1845.

Smith
*v.*
Russell.

Again, in giving a construction to the act of 1839, we must take it in connexion with the act of the year previous, which authorizes the successor of any judge, in whose name any suit on a probate bond may be pending, to enter and prosecute the same in his own name, in the same manner his predecessor might have done, had he continued in office; and, construing these two acts together, we do not think it any strained construction, to say, that for the purposes of this, and all other cases similarly situated, *Russell* is the successor of *Wright*, within the meaning of these acts. A different construction, while it would be the means of delay in the recovery of this debt, could yet be of no possible benefit to any body. The moment after the cause was out of court, *Russell* could commence a new suit, and prosecute it to final judgment. Such a result, it was the obvious design of the acts of 1838 and 1839 to provide against; and we do no more than carry out this design, by the construction we have given to those acts.

It was made a question, by the defendant in error, whether the objection to the prosecution of this suit in the name of *Russell*, could be taken advantage of, by writ of error. The result to which we have come does not make it necessary to determine this question. Still, as the question was made and argued, we have no hesitation in saying, that if there was no other difficulty in the plaintiff's case, we do not think this objection ought to prevail. The suit was prosecuted in the name of *Russell*, as the plaintiff, instead of *Wright;* and this appears of record. The verdict and judgment are in favour of *Russell*. The bond was not payable to him; and this appears also of record, because, by the pleadings, it is made a part of the case. If, then, the plaintiff in error was right in supposing that *Russell* could not enter and prosecute the suit in his own name, then it would appear, that he had obtained a verdict and judgment to which he has no more right than any stranger. We have no doubt that this might be

corrected, and the judgment reversed, by writ of error.   But as there is no error, the judgment of the superior court must be affirmed.

In this opinion the other Judges concurred.

Judgment affirmed.